UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:16-cv-24031-KMW

SARA HERRERA

     Plaintiff,

v.

7R CHARTER LIMITED,

     Defendant.

_____/

**OMNIBUS ORDER**
**ON MOTION TO STRIKE JURY TRIAL DEMAND, MOTIONS TO STRIKE EXPERT**
**WITNESSES, MOTIONS IN LIMINE, AND MOTION FOR PRETRIAL CONFERENCE**

     **THIS CAUSE** came before the Court on various pretrial motions.  ECF Nos. [143], [144],

[145], [146], [147], [158] and [172].  The Court has considered each motion, the pertinent portions

of the record, and the relevant authorities, and orders as follows:

     I.     **DEFENDANT'S MOTION TO STRIKE JURY TRIAL DEMAND IS**
              **GRANTED.**

     Defendant's, 7R Charter's, ("Defendant") Motion to Strike Plaintiff's Untimely Demand

for Jury Trial was filed on June 26, 2020 ("Motion to Strike Jury Trial Demand").  ECF No. [143].

Plaintiff, Sara Herrera, ("Plaintiff") filed a Response in Opposition to Defendant's Motion on July

10, 2020.  ECF No. [157].  On July 15, 2020, Defendant filed a Reply to Plaintiff's Response.

ECF No. [163].  The Court heard oral argument on the Motion to Strike Jury Trial Demand on

September 9, 2020, ECF No. [178], and announced the basis for the ruling below at the conclusion

of another hearing in this matter on October 8, 2020, ECF No. [181].  For the reasons stated below,

Motion to Strike Jury Trial Demand, ECF No. [143], is **GRANTED**.

### A.   Background

In its Motion to Strike Jury Trial Demand, Defendant argues that Plaintiff's demand for a jury trial was untimely under Federal Rule of Civil Procedure ("FRCP") 38.  ECF No. [143] at 3. Since Plaintiff's original complaint failed to demand a jury trial and did not demand a trial within fourteen days after Defendant's initial Answer was served on November 16, 2016, Defendant asserts Plaintiff waived her rights and can no longer demand a jury.  *Id.* at 2, 5.  Moreover, Defendant argues that its Amended Answer, filed on May 10, 2018, did not revive Plaintiff's right to demand a jury trial, filed on May 24, 2018, because the Amended Answer did not introduce new issues to the Jones Act negligence claim.  *Id.* at 2, 6–7.  Instead, Defendant argues that the Amended Answer merely clarifies and further elaborates Defendant's already pleaded position that both Captain Bernard Calot ("Calot") and Plaintiff were acting outside the scope of their employment when Plaintiff was injured on the tender vessel.  *Id.* at 7.  Therefore, because the Amended Answer did not change the nature of the case, nor add any new parties, Plaintiff's Demand for Jury Trial is untimely.  *Id.* at 8–9.

In addition to arguing that Plaintiff's Demand is untimely, Defendant's Motion also argues that allowing Plaintiff's demand for a jury trial would prejudice Defendant under Rule 39 of the FRCP.  *Id.* at 9.  Specifically, because Plaintiff filed her Notice of Jury Trial 554 days after Defendant filed its initial Answer and Affirmative Defenses and fifty-five days after the discovery cut off, Defendant asserts this Court should not exercise its Rule 39(b) discretion in light of Plaintiff's lengthy delay with no justification.  *Id.* at 10.   In addition, Defendant claims that allowing this case to be tried by a jury would be prejudicial because Defendant has been preparing its case as a bench trial, and since discovery has already closed, Defendant cannot depose Plaintiff's treating physicians and expert witnesses in preparation for a jury trial.  *Id.* at 10–11.

Defendant did not take these depositions on the grounds that the matter was proceeding as a bench trial. *Id.* Defendant also contends that, since Defendant has not been able to hire experts to rebut Plaintiff's damages experts, and reopening discovery for a jury trial would significantly delay the completion of the case, this Court should not exercise its discretion under Rule 39(b). *Id.* at 12.

In the Response, Plaintiff argues her Demand for Jury Trial was timely pursuant to Rule 38 because the demand was filed less than fourteen days after Defendant filed its Amended Answer. ECF No. [157] at 1. Plaintiff disagrees that the Amended Answer creates no new issues, and states that while Defendant's original Answer admitted Plaintiff was working within the scope of her duties when she went aboard the tender for a "sea trial," the Amended Answer claims for the first time that Plaintiff was outside the scope of her employment when she and Calot took the tender for a "joyride." *Id.* at 3–4. According to Plaintiff, under the original pleading, the single liability issue was whether Calot was negligent and the issue of scope of employment was not relevant until Defendant filed its Amended Answer. *Id.* at 4. Also, because Defendant introduced that Calot owned the tender in which Plaintiff was injured and that she was not working for the main vessel at the time of her injury, Plaintiff claims the Amended Answer includes positions that require the parties to prove whether Defendant was the owner of the tender and whether Plaintiff was in the scope of employment during a "joyride" to bring Defendant within the scope of the Jones Act. *Id.* at 5. Therefore, Defendant's amendments are not merely clarifications, but rather complete shifts Defendant's positions and theories. *Id.* at 5-6.

As to Rule 39(b), Plaintiff argues that the Rule supports a basis for ordering a jury trial because all of the factors considered by the Court in weighing Rule 39 motions are in favor of Plaintiff. *Id.* at 8. Specifically, Plaintiff argues the length of delay and reason for delay were justified because Plaintiff's jury demand was filed within fourteen days of the Amended Answers

which raised the new issues related to scope of employment, ownership of the tender, and the purpose of the trip on which Plaintiff was injured. *Id.* at 8–9.  Furthermore, while trial preparation may be different between jury and bench trials, Plaintiff dismisses Defendant's concerns stating Defendant had plenty of time to prepare for jury trial since at least May 14, 2018, when the parties filed their Joint Proposed Jury Instructions. *Id.* at 9.  Plaintiff then argues that Defendant was unable to provide any reason why a jury trial, but not a bench, trial would require additional depositions to be taken or additional experts to be hired. *Id.*  With this in mind, Plaintiff believes the degree of prejudice factor also weighs in her favor. *Id.* at 10.  Finally, Plaintiff addresses Defendant's disruption of schedules argument by stating neither of the Court's scheduling orders specify whether there will be a bench or jury trial and Defendant failed to show any specific disruptions in the Court's schedule that would result from the timing of Plaintiff's jury demand. *Id.*  Therefore, Plaintiff asserts that since all the factors weigh in favor of a jury trial, and there is no strong and compelling reason to deny Plaintiff a jury, Rule 39 should apply. *Id.*  After analyzing the factors, Plaintiff then argued this Court should broaden the scope of the issues tried by the jury to the entire case, rather than just the new issues from the Amended Answer, because the new issues raised make up a majority of the dispositive issues on liability. *Id.* at 10–11.

With its Reply, Defendant reasserts that the changes or additions to the Amended Answer merely clarify its position that Plaintiff was outside the scope of her employment when she went on the tender with Calot.  ECF No. [163] at 1.  According to Defendant, Plaintiff never asserted in her Complaint that she was in the course and scope of her employment and Defendant never admitted she was in the scope of her employment in its original Answer. *Id.* at 2.  Rather, Plaintiff merely stated she was a crewmember of OLGA, which Defendant admits, but does not say she was working as an employee of the OLGA when she went on the tender with Calot. *Id.* at 2–3.

Therefore, Defendant asserts the Amended Complaint does not introduce new issues, but rather uses terms like "joy ride" to clarify its position that Plaintiff was not working at the time of her incident.  *Id.*  Since a claim for Jones Act Negligence requires proof the injured employee and the employee who caused the harm were both acting in the course of their employment at the time of the accident, Defendant argues its Amended Answer only addressed the issue that was introduced from Plaintiff's Complaint.  *Id.* at 3.

Revisiting Rule 39(b), Defendant argues Plaintiff misconstrued the factors this Court would consider when exercising discretion.  *Id.* at 4.  Whereas Plaintiff claims there would be no disruption to the Court's schedule, Defendant argues the District Court's Administrative Order 2020-41, which delays all jury trials in the Southern District of Florida until October 13, 2020, guarantees that a delay would occur if a jury trial is granted.  *Id.* at 4–5.  Also, regarding the Notice of Jury Trial, Defendant emphasizes the Notices were filed forty-five days after discovery cut off and other pre-trial documents were filed.  *Id.* at 5.  Therefore, since Defendant has been preparing for bench trial since the inception of the case through the closing of discovery, switching to a jury trial would be prejudicial to Defendant's strategy.  *Id.* at 5–6.  While Plaintiff suggest the delay in a demand should be measured from the date of the Amended Answer, Defendant asserts it should be from the original Answer since no new issues are introduced in the amendments.  *Id.* at 8.  Since Plaintiff also provided no reason or excuse for failing to make a timely jury request, Defendant argues this Court should not excuse the 554 day delay and grant a jury trial under Rule 39(b).  *Id.* Finally, Defendant argues that if a jury trial is granted, the jury's decision should be limited to the new issues only.  *Id.* at 9–10.  Specifically, Defendant cites to cases where courts have exercised their right to broaden the issues tried by the jury when certain factors were presented, such as

additional parties.  *Id.*  As such, Defendant contends that no such factors are present in the instant case, and, therefore, the Court should limit the jury's decision to the new issues only.  *Id.*

### B.  Analysis

There are two matters for the Court to consider.  First, whether the Amended Answer introduced new issues of fact in the case.  If it did so, then it is undisputed that the demand for a jury trial would be timely as the Amended Answer would have given Plaintiff another fourteen-day period to file a jury demand and the jury demand was filed within fourteen days of the Amended Answer.  If the Amended Answer did not introduce new facts, then the petition is clearly untimely as the time frame to file it was no later than fourteen days after the original Answer was filed, and, here, the jury demand was filed years after that date.  After having a full opportunity to hear argument and consider the law and the facts of the case as a whole, the Court finds that the Amended Answer did not introduce new facts, and therefore, the jury demand is untimely and should be stricken.  The Court announced its ruling during the Hearing on October 8, 2020, ECF No. [181], and the following memorializes that ruling.

Although most of the cases addressing the timeliness of a jury demand discuss whether an amended complaint introduced new facts which revitalize the time frames allotted for in Rule 38, the standard applied here, where the new filing is an amended answer, is the same.  In *LaMarca v. Turner*, 995 F.2d 1526 (11th Cir. 1993), prison inmates brought a civil rights action against prison officials alleging cruel and unusual punishment by a former superintendent.  *Id.* at 1530.  After plaintiff's third amended complaint, the trial court denied defendant's demand for jury trial, arguing that he had already waived his right after the initial complaint.  *Id.* at 1531.  On appeal, the Eleventh Circuit held the trial court erred in denying the demand for jury trial, because while defendant had waived the right with the initial complaint, the addition of new plaintiffs in the

amended complaints brought new issues that justified revitalizing the right to jury trial.  *Id.* at 1545.  While new facts that "merely clarif[y] 'the same general issues' raised in the original complaint" do not create new issues of fact upon which to assert a jury demand, the facts and new parties in the amended complaints included ten independent damages actions and one class action for injunctive relief.  Each of these actions raised distinct factual issues and defendant was not "put on notice [as to these claims] by the original round of pleadings in this case." *Id.*

Here, there was a shift from the initial Answer to the Amended Answer both in how it addressed the allegations in paragraph 8 of the Complaint, and in its affirmative defenses. Specifically, in the initial Answer, Defendant admitted that Plaintiff was serving as a crewmember of the vessel (the Olga) when the tender (the Protector) went for a sea trial.  ECF No. [8].  In the Amended Answer, Defendant changed its answer and only admits that Plaintiff accompanied the Captain on *his* vessel (no longer described as a tender), for a joy ride (no longer described as a sea trial).  ECF No. [73].  In short, Defendant's theory changed from Plaintiff being on board the Protector as a tender of the Olga for a sea trial, to Plaintiff being on the Protector, the Captain's personal vessel, for a joyride.  To be sure, the shift from tender on a sea trial to personal vessel on a joyride is not insignificant.  However, it is not a shift or change of *facts*.  Indeed, whether the ship is a tender or not is one aspect that the trier of fact will have to consider in determining whether Plaintiff was within the scope of her employment.  Likely, whether the voyage was a sea trial or a joy ride is another determination that the fact finder will make, in order to determine whether Plaintiff was acting within the scope of her employment.  These, however, are not facts, they are descriptions of a set of facts.  The facts, for example, may be who owned the boat, how the boat was used in the past, where the boat was going on that day, who was on the boat, and why the boat was making that voyage.  Whether those facts lead the fact finder to conclude that the boat a tender

or whether the voyage was a sea trial are descriptions of those facts that may or may not lead to a finding that Plaintiff was within the scope of her employment.  Indeed, Plaintiff's counsel during oral argument conceded that whether the Protector was a tender or whether the voyage was a joyride are not dispositive of whether Plaintiff was acting within the scope of her employment. Similarly, the Affirmative Defenses raised in the Amended Answer do not introduce new facts from those provided in the initial Answer.  In fact, the Amended Answer adds four new affirmative defenses that merely assume the facts as they were already averred in the Initial Answer.[1]  ECF No. [73] at 8.  For instance, affirmative defense eighteen addresses the issue of scope of employment which, as discussed above, is merely a description of the facts already at issue, as opposed to an introduction of new facts.  As such, neither the change in the answer to paragraph 8, or the affirmative defenses that were added to the Amended Answer, change the factual scenarios.  Therefore, the Court finds that the changes that were presented in the Amended Answer are not changes in facts that would have revived the deadline to file a jury demand, and, as such the demand is untimely.

From a Rule 39 perspective, the Court finds insufficient basis to allow the jury demand to stand.  While the general rule in the circuit regarding FRCP Rule 39(b) is that the trial court "should grant a jury trial in the absence of strong and compelling reasons to the contrary," district courts will consider (1) whether the case involves issues which are best tried to a jury; (2) whether granting the motion would result in a disruption of the court's schedule or that of the adverse party; (3) the degree of prejudice to the adverse party; (4) the length of the delay in having requested a jury trial; and (5) the reason for the movant's tardiness in requesting a jury trial.  *Parrot v. Wilson*,

---

[1] The Amended Answer adds affirmative defenses eighteen through twenty-one. ECF No. [73] at 8.

707 F.2d 1262 (11th Cir. 1983).  While district courts are supposed to balance each of these factors, the Eleventh Circuit will give considerable weight to the movant's excuse for failing to make a timely jury request.  *Id.*  If that failure is due to mere inadvertence on the movant's part, the Eleventh Circuit generally will not reverse the trial court's refusal to grant a 39(b) motion.  *Id.*

As the Court noted during the Hearings, the Court sees no reason why a jury demand would be proper or necessary at this juncture.  The issues posed are not necessarily best tried before a jury.  Given the administrative orders delaying jury trials due to the pandemic, as well as the fact that Defendant would need additional time to prepare, a jury trial would certainly cause a delay in this case.  Indeed, Defendant would be prejudiced without a continuance and additional discovery. Finally, the jury demand was filed over 500 days after the deadline, and there appears to be no reason why Plaintiff waited so long to demand a jury.  Indeed, it was only after the Amended Answer was filed that Plaintiff even raised the issue.  As such, the demand is stricken.

## II. DEFENDANT'S MOTIONS TO STRIKE EXPERTS IS GRANTED IN PART AND DENIED IN PART.

Defendant filed three motions to strike expert witnesses.  First, Defendant filed its Motion to Strike Portions of Dr. Elberg's Testimony as Plaintiff's Witness ("Motion to Strike Dr. Elberg's Testimony"), filed on June 29, 2020.  ECF No. [144].  Plaintiff, Sara Herrera, ("Plaintiff") filed a Response in Opposition to Defendant's Motion on July 13, 2020.  ECF No. [161].  On July 16, 2020, Defendant timely filed a Reply to Plaintiff's Response.  ECF No. [164].

Second, Defendant filed the Motion to Strike Timothy M. Morgan ("Morgan") as a Rebuttal Expert Witness ("Motion to Strike Testimony of Captain Morgan").  ECF No. [145]. Plaintiff, Sara Herrera, ("Plaintiff") filed a Response in Opposition to Defendant's Motion on July 13, 2020.  ECF No. [159].  On July 16, 2020, Defendant timely filed a Reply to Plaintiff's Response.  ECF No. [165].

Finally, Defendant also filed its Motion to Strike or Limit Plaintiff's Experts, Dr. Raffa and

Dr. Frain, as expert witnesses ("Motion to Strike Dr. Raffa and Dr. Frain"), filed on June 29, 2020.

ECF No. [146].  Plaintiff, Sara Herrera, ("Plaintiff") filed a Response in Opposition to Defendant's

Motion on July 13, 2020.  ECF No. [162].  On July 17, 2020, Defendant timely filed a Reply to

Plaintiff's Response.  ECF No. [166].

For the reasons noted below, Defendant's Motion to Strike Dr. Elberg's Testimony is

**GRANTED IN PART AND DENIED IN PART;** Defendant's Motion to Strike Testimony of

Captain Morgan is **GRANTED**; and the Motion to Strike Dr. Raffa and Dr. Frain is **DENIED**.

### A.     Legal Standard

Federal Evidence Rule 702 governs the admission of expert testimony in federal court, and

provides:

> If scientific, technical, or other specialized knowledge will assist the
> trier of fact to understand the evidence or to determine a fact in issue,
> a witness qualified as an expert by knowledge, skill, experience,
> training, or education, may testify thereto in the form of an opinion
> or otherwise, if (1) the testimony is based upon sufficient facts or
> data, (2) the testimony is the product of reliable principles and
> methods, and (3) the witness has applied the principles and methods
> reliably to the facts of the case.

Fed. R. Evid. 702.  District courts have a duty under Rule 702 to "ensure that any and all scientific

testimony or evidence admitted is not only relevant, but reliable." *Wilson v. Taser Int'l, Inc.*, 303

F. App'x 708, 714 (11th Cir. 2008) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509

U.S. 579 (1993)).  Thus, a court performs a "gatekeeping role" regarding admissibility of expert

testimony.  *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

The Eleventh Circuit has set out three requirements that an expert must meet before his or

her opinions may be admitted.  *Hughes v. Kia Motors Corp.*, 766 F.3d 1317, 1328 (11th Cir. 2014).

First, the expert must be qualified on the matter about which he or she intends to testify. *Id.*, (citing *City of Tuscaloosa v. Harcros Chemicals, Inc.*, 158 F.3d 548, 562 (11th Cir. 1998)).

Second, the expert must employ reliable methodology. *Id*. In *Daubert*, the Supreme Court set out four non-exclusive criteria for reliability determinations: "(1) whether the expert's methodology has been tested or is capable of being tested; (2) whether the technique has been subjected to peer review and publication; (3) the known and potential error rate of the methodology; and (4) whether the technique has been generally accepted in the proper scientific community." *Wilson v. Taser Int'l, Inc.*, 303 Fed. Appx. 708, 714 (11th Cir. 2008) (citing *McDowell v. Brown*, 392 F.3d 1283, 1298 (11th Cir. 2004) (citing *Daubert*, 509 U.S. at 595)). These factors may guide a district court's reliability inquiry, but the district court ultimately has "broad latitude" as to how it determines reliability. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). However, "nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Geyer v. NCL Bahamas Ltd.*, 203 F. Supp. 3d 1212, 1215 (S.D. Fla. Aug. 26, 2016) (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)). "A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. at 146. Indeed, the advisory committee notes for Rule 702 state that:

> If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. The trial court's gatekeeping function requires more than simply "taking the expert's word for it."

Fed. R. Evid. 702 advisory committee notes (2000 amends.) (emphasis added).

Third, the expert's testimony must be able to assist the trier of fact through the application of expertise to understand the evidence or facts in issue. *Tuscaloosa*, 158 F. 3d at 562. However,

"it is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Rosenfeld v. Oceania Cruises, Inc.*, 654 F. 3d 1190 (11th Cir. 2011) (quoting *Quiet Tech. DC–8, Inc. v. Hurel–Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003)). "Quite the contrary, 'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *Quiet Tech.*, 326 F.3d at 1341 (quoting *Daubert*, 509 U.S. at 596). Indeed, "in most cases, objections to the inadequacies of a study are more appropriately considered an objection going to the weight of the evidence rather than its admissibility." *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1188 (9th Cir. 2002); *see also Quiet Tech.*, 326 F.3d at 1345 (noting that, "[n]ormally, failure to include variables will affect the analysis' probativeness, not its admissibility" (quoting *Bazemore v. Friday*, 478 U.S. 385, 400 (1986)).

>    B.    **Analysis**

>    >    1.    **Although The Testimony of Dr. Elberg Should Not Be Stricken, Dr. Elberg's Testimony Is Limited.**

Defendant moves the Court for an order striking or limiting the testimony of Dr. Larisa Elberg, who treated Plaintiff for her injuries on the day of her incident. ECF No. [144] at 1. According to Defendant, Dr. Elberg's testimony that moves beyond her observations during the course of her treatment of Plaintiff, crosses the line from lay opinion testimony to expert testimony based on scientific, technical, or other specialized knowledge. *Id.* at 6. Therefore, Dr. Elberg's testimony should be limited to only discuss her treatment of Plaintiff for her injuries, because she has not been disclosed as an expert pursuant to Rule 26 of the FRCP. *Id.*

In addition, Defendant claims Dr. Elberg's records have various statements of fact that fall outside the scope of her treatment of Plaintiff's injuries. *Id.* Statements that the doctor was seeing Plaintiff "s/p fall from yacht" and that her "husband is getting intimidated by [an] insurance

company attorney" conflict with Plaintiff's claims and would confuse the trier of fact.  *Id.* at 6–7.

Defendant asserts that while saying Plaintiff was seeing Dr. Elberg because of a fall may be helpful

to her treatment, adding that the fall occurred "from a yacht" does not relate to the field of

neurology or Plaintiff's injuries and should be excluded because it does not lead to a clear

understanding of Dr. Elberg's decision-making process.  *Id.*  Also, the statement pertaining to the

husband's alleged harassment improperly injects insurance and hearsay into the litigation and is

irrelevant to the injury from which Plaintiff sought treatment.  *Id.* at 7.

Finally, Defendant argues Dr. Elberg's letter to Plaintiff's counsel saying she was injured

in a boating accident was outside her scope as a lay witness because it is an opinion that is not

related to her treating Plaintiff's injuries.  *Id.* at 8–9.  Whether Plaintiff was harmed from a boating

accident or from elsewhere would not change how Dr. Elberg treated her injuries.  *Id.* at 9.

Therefore, this claim creates a causal link that is improper for a lay witness to make and should be

stricken.  *Id.* at 9–10.

In their Response to Defendant's Motion, Plaintiff asserts the Motion is premature and has

opened the door for them to address causation with Dr. Elberg.  ECF No. [161] at 1.  Plaintiff

argues Dr. Elberg is entitled to testify on her treatment without being disclosed as an expert and

without preparing an expert report because she is Plaintiff's treating physician.  *Id.* at 2.  Instead,

the medical record and letter that Dr. Elberg provided are directly related to her treatment and

diagnosis of Plaintiff and the conclusions she drew from her examination.  *Id.*  Plaintiff relies on

*Wilson v. Taser Int'l, Inc.*, 303 F. App'x 708 (11th Cir. 2008), to show that while the court there

held plaintiff's expert could not share a hypothesis about plaintiff's cause of injury, Dr. Elberg's

testimony does not apply because her records and letters relate principally to her treatment and

diagnosis of Plaintiff.  *Id.* at 3.  Rather, Dr. Elberg's testimony does not go beyond her personal

knowledge gained from examining and treating Plaintiff and therefore does not cross into the realm of expert testimony. *Id.* Therefore, her testimony regarding the diagnosis of Plaintiff's pain and need for future treatment is lay witness testimony and is not subject to a *Daubert* analysis or expert disclosure requirements. *Id.*

In its Reply to Plaintiff's Response, Defendant states the Court should grant the Motion because Plaintiff fails to confirm that Dr. Elberg's testimony will not introduce matters of causation or opinions upon review of information provided by Plaintiff's counsel or in anticipation of litigation. ECF No. [164] at 1. Also, Defendant asserts that Plaintiff was wrong to suggest the Motion "opened the door" to testimony on causation, because the rule for opening the door only applies when one party introduces inadmissible evidence to the finder of fact, not in a pre-trial motion. *Id.* at 1–2. Defendant then argues Plaintiff failed to provide an argument addressing each Exhibit objected to by Defendant in its Motion. *Id.* at 2.

As the Court noted at the Hearing, Dr. Elberg is clearly not an expert and cannot be proffered as an expert at trial. Dr. Elberg was not noticed as an expert and no expert disclosures or reports have been provided. Indeed, any testimony that goes beyond Dr. Elberg's role as a fact witness, specifically, as a treating physician, would be subject to a *Daubert* analysis for which Rule 26 disclosures are required. No such disclosures were made, and as such, Dr. Elberg may not testify as an expert.

Second, the Motion does not "open the door" to any testimony that relates to causation or any other issue outside the confines of a treating physician. Plaintiff offers no legal support for this novel proposition. It should be clear that filing a motion to limit testimony does not open the door for that very testimony to be admitted.

Third, as noted above, Dr. Elberg may testify as the treating physician. Given the arguments posed by Plaintiff's counsel at the hearing, the Court finds it necessary to specifically remind counsel that Dr. Elberg should not be rendering opinions or testifying outside of those issues that fall within her role as a treating physician. Finally, the documents attached and addressed in the Motion do not appear to be documents that can be properly admitted into evidence. Although Plaintiff may attempt to lay a foundation for them at trial, at this stage, it is unclear how Plaintiff could succeed in that effort. Because the matter is a bench trial, there appears less of a need to redact the information; however, hearsay statements regarding the litigation or the cause of the accident should not be elicited. In short, Dr. Elberg should limit her testimony to her treatment of Plaintiff and is not permitted to testify as to issues of causation, insurance, or to issues or facts surmised from discussions with Plaintiff's Counsel.

## 2. The Testimony of Captain Morgan Does Not Satisfy the Requirements of *Daubert*.

In its Motion to Strike, Defendant asserts Morgan should be stricken as an expert witness because he does not have the requisite experience as a yacht captain to assist the trier of fact. ECF No. [145] at 3. Specifically, Morgan's experience is limited to underwater installations, utilizing vessels under 100 GT[2] in near coastal U.S. waters, and salvage operations involving those same category vessels. *Id.* at 3–4. Since Morgan's license only allows him to operate vessels near coastal waters within the United States, Defendant argues his testimony would not help the trier of fact because the OLGA was chartered in international waters and is much heavier than 100 GT. *Id.* at 4. Also, Defendant recognizes that Morgan's license expired in September 2019, and, since Plaintiff did not update her expert disclosures, Morgan has no proof that he is qualified to render

---

[2] "GT" is the abbreviation for gross tonnage, which is a measure of a ship's overall internal volume.

an opinion regarding the Protector in near coastal waters.  *Id.*  Furthermore, Morgan has no experience in relation to working for or on an international pleasure yacht or conducting sea-trials related to international charter yachts or vessels.  *Id.* at 5.  Rather, Morgan only has experience as a captain for commercial vessels, and therefore does not qualify as an expert under *Daubert* with respect to OLGA, the Protector, or the alleged sea-trial conducted by Bernard Calot ("Calot").  *Id.* at 6.  Next, Defendant argues Morgan's opinions are based on insufficient facts and data because he relies solely on his insufficient experience to render his opinions without explaining how his experience led to the conclusions reached.  *Id.* at 6–7.  Instead, Defendant states Morgan created his opinions without reviewing depositions, conducting any analysis, or conducting research, but rather solely through his experiences and select documents provided by Plaintiff.  *Id.* at 7–8. Moreover, Defendant argues that by determining the credibility of certain witnesses and whether Calot and Plaintiff acted reasonably, Morgan essentially opines on ultimate issues of the case based on one-sided testimony.  *Id.* at 10.  Therefore, Morgan's opinions are improper, unsupported by a reliable methodology, and must be excluded.  *Id.* at 11.

In addition, Defendant asserts Morgan's testimony is not the product of reliable principles and methods because his opinions are unreliable and not useful with no evidence to render a professional opinion.  *Id.* at 11–12.  According to Defendant, Morgan's opinions are also inadmissible because they are conclusory based on his experiences, without explaining how his experiences lead to the conclusions reached, why his experiences are sufficient, or how the experiences can be applied to the facts.  *Id.* at 12–13.  Rather, Defendant claims Morgan wishes the Court to merely take his word for it that his experiences make his opinions reliable.  *Id.* at 13. Finally, Defendant argues Morgan's testimony would not assist the trier of fact because it simply echoes the arguments Plaintiff's attorney can make at trial with exhibits and eyewitness testimony,

rather than provide any unique information.  *Id.* at 14.  Therefore, because Morgan's testimony will offer nothing more than what Plaintiff wants him to say, it should be excluded because it offers nothing special to the trier of fact.  *Id.*

Plaintiff argues in her Response that Defendant's challenge of Morgan's relevant experience is unnecessary because Morgan was not consulted to provide expert testimony regarding the handling of a yacht; but, instead, was consulted to provide testimony as to whether the actions of Calot and Plaintiff were customary and prudent while operating a sea trial of the Protector.  ECF No. [159] at 2–3.  According to Plaintiff, good seamanship and seakeeping practices apply whether on a small boat or a large yacht.  *Id.* at 1.  Regarding Defendant's claim that Morgan's license is expired, Plaintiff attached a copy of Morgan's renewed 100-ton Masters License with Towing Endorsement to his Response.  ECF No. [159-1].  Also, Plaintiff claims that while an expired license my affect an expert's ability to serve a commercial captain, it does not affect their ability to serve as an expert.  ECF No. [159] at 3.  Next, Plaintiff addresses Defendant's claim that Morgan's opinions are based on insufficient facts and data by stating Defendant can address any issues adequately in cross-examination without requiring this Court to make a finding.  *Id.* at 4.  Also, Plaintiff argues that while experts may not testify to ultimate legal issues, they can offer factual benchmarks against which to measure a party's procedure.  *Id.* at 5.  With this in mind, Morgan opined that Plaintiff was not negligent aboard the Protector based on his own experience in owning and maintaining several vessels similar to the Protector.  *Id.*

Plaintiff then argues Morgan's opinions are the product of reliable principles and methods because they are based on a telephonic interview with Calot, "other evidence" chronicled in his opinion, and his experience handling tenders similar to the Protector.  *Id.* at 6.  Lastly, Plaintiff states that Morgan's testimony would assist the trier of fact because he has been an expert of

handling vessels for over forty years. *Id.* at 6. Therefore, Morgan has a unique position that can help the trier of fact have a better understanding of the industry standards of a sea trial. *Id.*

In its Reply, Defendant argues that since Plaintiff must show the damages from her injuries sustained aboard the Protector should be imputed to Defendant, Morgan must have the requisite expertise in international private yacht charter operations or international yacht tendering operations to be considered an expert witness. ECF No. [165] at 1. Defendant reasons that an expert cannot provide a reliable opinion on the sea trial of the Protector and an opinion as to whether the actions of Calot and Plaintiff were customary and prudent, without also having an expert understanding of the tender's main ship. *Id.* at 2–4. Also, the experience of yacht operators and mariners of vessels under 100 tons is clearly different as evidenced by the different licensing required for each. *Id.* at 5. Regarding the license attached to Plaintiff's Response, Defendant reasserts that Plaintiff failed to update its discovery by the Court's deadline to show Morgan had a valid license. *Id.* at 5–6. Defendant then restates that Morgan's opinions are based on insufficient facts, data, and methodology, which make them unreliable. *Id.* at 6–7. Defendant then argues that Plaintiff misunderstood Defendant's point against Morgan opining on ultimate legal issues. *Id.* at 7–8. Defendant attempts to clarify such point by highlighting the fact that Morgan does not have vast experiences on the issues to be addressed to this Court and cannot make determinations on these issues in his opinion based merely on his experiences, without providing explanation. *Id.* Finally, Defendant reasserts that Morgan's testimony would not assist the trier of fact because his forty years of experience, while impressive, do not offer information on matters that are beyond the understanding of the average lay person or that Plaintiff's lawyers can argue themselves. *Id.* Furthermore, Defendant states the opinions offered by Morgan are filled with legal conclusions

regarding whether Calot and Plaintiff were negligent, which would tell the trier of fact how he thinks they should rule, and, therefore, is improper testimony. *Id.* at 9.

On October 8, 2020, the Court held an evidentiary hearing as to this Motion and heard testimony from Captain Morgan. ECF No. [181]. Plaintiff filed a new curriculum vitae and an expert report that clarified the opinions that Captain Morgan intended to make at trial. ECF No. [180-2]. Although there are some issues with respect to the timeliness of the new report given the substantive changes that were made, the Court declined to strike the witness or the report, and instead, proceeded to the merits. At the conclusion of the Hearing the Court announced its ruling **GRANTING** the Motion. Although the Court noted its reasons for doing so at the hearing, the Court summarizes those reasons below.

Although Captain Morgan has experience with yachts and boating in general, he has been asked to render an opinion relating to the sea trial of the Protector and whether the actions of the captain and crew were customary and prudent. Specifically, Plaintiff proposed that he give the following four expert opinions. For the reasons stated below, Captain Morgan may not render any of these "opinions."

OPINION 1: That Plaintiff was qualified to assist Captain Calot during the sea trial. As the Court noted at the hearing, Captain Calot testified that Plaintiff was qualified to assist the Captain because she took a one week, "deck week" orientation. Although Captain Morgan has extensive experience as a captain, that statement does not appear to be the kind of testimony for which an expert is even necessary. Indeed, Captain Morgan testified that handling the lines, which is what he would testify to, is something that anyone who has been on a boat could do.

OPINION 2: The Protector was the tender to the M/Y Olga. Captain Morgan's "opinion" on this is issue is based *entirely* on his conversation with Captain Calot. As such, it is not an expert

opinion; indeed, it would be nothing more than impermissible hearsay as all he would do is repeat what Captain Calot told him about the Protector.

OPINION 3: Captain Calot conducted the sea trial of the Protector in a reasonable and prudent manner.  Although Captain Morgan may be an experienced captain, he testified that his opinion on this matter was based on a limited review of the evidence—again, primarily relying on Captain Calot.  In addition, he testified that there is no method or criteria which he was using to render this opinion.  Much like test driving a car, whether the voyage was a sea trial depends on the issue with the vessel, the manner in which the vessel would be used, and the experience of the captain.  Finally, and perhaps most importantly, Captain Morgan did not know what load (persons or gear) the Protector typically transported, and, as such, could render no opinion as to whether having persons on the vessel during the day in question was actually proper for a sea trial.

OPINION 4: Herrera was not negligent, used good seamanship, and did not cause or contribute to her injuries, and the characteristics of the ship are what contributed to her incident.  Captain Calot conducted no test or inspection of the vessel to support this position.  Indeed, Captain Morgan states that this his opinion was based on his limited experience with these types of a boats.  Specifically, his experience with vessels like the Protector was nothing more than a one week period, approximately a decade ago, where he studied vessels similar to the Protector in the hopes of purchasing one for his company.  From such experience, Captain Morgan intended to testify that Plaintiff could have been knocked down if the Protector was hit by a wake because of the manner in which the Protector would be expected to react to such a wake.  Not only does Captain Morgan lack the expertise to testify as he intended, his opinion lacks any support in any methodology or even experience.

As such, and for the reasons stated at the hearing, Captain Morgan, even if considered an expert yachtsman, may not testify as an expert on the issues identified by Plaintiff.

3.   **The Testimony of Dr. Raffa and Dr. Frain Satisfies the *Daubert* Standard and Should Not Be Stricken.**

In the Motion to Strike, Defendant describes Dr. Raffa as an economist who will testify on the diminution of Plaintiff's future earnings capacity, loss of past earnings, and cost of future life care needs.  ECF No. [146] at 2.  Defendant argues that Dr. Raffa's testimony should be limited because he does not base his opinion on actual facts and data, but rather on tables and reports that presume Plaintiff will have the right to work in the United States.  *Id*. at 4–5.  Since Plaintiff is not a permanent resident or a naturalized citizen, but was instead only given permission to work on a B-1 visa, Dr. Raffa's testimony is irrelevant because the facts he relies on wrongly assume Plaintiff can work in the United States.  *Id*. at 5.  While Plaintiff will be legally allowed to remain in the United States as a dependent under her husband who is a TN (NAFTA) visa holder, this TD non-immigrant status would not give her permission to work while in the United States.  *Id.* at 5–6.  In addition, Dr. Raffa's testimony is not the product of reliable principles and methods because his opinion is based entirely on analyses and conclusions that rely on United States surveys, statistics and reports, which Defendant asserts is improper without taking into account Plaintiff's employment and immigration status.  *Id*. at 8.  Finally, Defendant argues that Dr. Raffa's Testimony would not assist the trier of fact because he failed to reliably render his opinion on facts that would enable him to express an accurate conclusion that is not based on mere speculation.  *Id.* at 10–11.

In regard to Dr. Frain, Defendant describes her as a vocational life care planning expert who will also discuss Plaintiff's loss of earning capacity and long-term care needs.  *Id* at 2.  In their Motion, Defendant argues that Dr. Frain does not have the requisite experience to assist the

trier of fact because she is not qualified to be a medical source as a vocational specialist. *Id.* at 12. Also, Defendant asserts that Dr. Frain does not base her opinions on actual facts or data because, similar to Dr. Raffa, she assumes Plaintiff will have the right to work in the United States and fails to provide the data to support her opinions regarding Plaintiff's potential future jobs. *Id.* at 13. According to Defendant, Dr. Frain's assumptions about Plaintiff's ability to work in the United States, as well as her failure to provide the data she utilized in forming her opinion, also show that her testimony is not the product of reliable principles and methods and would be of limited assistance to the trier of fact. *Id.* at 13–14.

In her Response, Plaintiff asserts that she shares her husband's status with respect to her ability to work in the United States and was working in the country at the time of her accident. ECF No. [162] at 3.  Plaintiff claims that Defendant improperly relies on a thirty-five-year-old case in attempts prove that Dr. Raffa's testimony should be stricken, and improperly relies on cases that are inapposite to a Jones Act recovery suit. *Id.* at 3–4.  Specifically, Plaintiff contends that Defendant relies on cases that involve plaintiff's that were residing in the United States illegally, without addressing the fact that Plaintiff, here, is a foreign national operating on a foreign visa. *Id.* According to Plaintiff, Defendant also fails to provide relevant cases in proving Dr. Raffa's testimony is not the product of reliable principle and methods; the caselaw Defendant relied on involved an illegal alien, which does not take into account Plaintiff's unique situation of having a B-1 visa and a husband who is a permanent resident in the United States. *Id.* at 4.  In claiming Dr. Raffa's Testimony would not assist the trier of fact, Plaintiff argues that Defendant is making conclusory allegations, without citing any relevant cases that would support its position. *Id.* at 5.

With respect to Dr. Frain's testimony, Plaintiff states Dr. Frain does have the requisite experience to assist the trier of fact because Dr. Frain was not selected to discuss Plaintiff's medical

condition as Defendant claims, but rather Plaintiff's economic damages related to the loss of her earning capacity and long-term care needs. *Id*. Therefore, any testimony that includes Plaintiff's medical conditions were based on medical records received from Plaintiff, and Dr. Frain has not and will not make any new medical findings in her testimony. *Id*. at 6. In regard to Defendant's claim that Dr. Frain does not base her opinions upon facts or data, Plaintiff argues that any issues with the facts relied upon by Dr. Frain in her testimony can be addressed in cross examination and do not require court intervention. *Id*. at 7. Finally, Plaintiff argues that Defendant's claim that Dr. Frain will not assist the trier of fact is also conclusory and lacks evidence. *Id*.

Defendant's Reply once again asserts that Plaintiff does not have the ability to work in the United States because a B1-visa holder cannot work in this country or be a permanent resident without special approval. ECF No. [166] at 2. Although Plaintiff may have converted her B-2 visa that allowed her to temporarily visit the country for work into a TD visa where she is a dependent under her husband's TN visa, this does not provide an ability to work because admission into the United States for TN/TD visa holders is expressly conditioned on an intent not to establish permanent residence in the country. *Id*. at 2–3. Therefore, even if Plaintiff planned on staying in the United States, her visa does not allow her to establish permanent residence in this country. *Id*. at 4. In response to Plaintiff's argument that she is entitled to a Jones Act Remedy because of her marriage, Defendant argues that since Plaintiff cannot work in the United States or seek permanent residence here, she is not entitled to seek damages. *Id*. at 6. Furthermore, since Plaintiff is from Mexico and the vessel she was injured on is from the Bahamas and not wholly owned by citizens of the United States, the fact that her injury was sustained in an American port does not mean Jones Act Negligence applies. *Id*. at 5. Additionally, Defendant states that the type of visa Plaintiff has

and the recent Presidential Proclamation that suspended the use of immigrants in the labor market would not allow her to renew her visa to stay in the country longer. *Id*. at 7.

Turning to Dr. Raffa's testimony, Defendant reasserts that Dr. Raffa basis his opinion on insufficient facts by speculative damages that rely on her ability to work in the United States rather than focusing on actual damages based on Plaintiff's inability to work in this country. *Id*.  Finally, Defendant argues that Plaintiff did not meet her burden to establish Dr. Frain's experience because Dr. Frain's report contains instances where she makes medical observations, such as describing that Plaintiff is "profoundly impacted by her injuries." *Id*.  Since Dr. Frain is not a psychologist or psychiatrist, she is not qualified to testify on the personal impact of Plaintiff's accident. *Id*. Therefore, because Dr. Frain is not qualified to give medical opinions or opinions on foreign workers on a foreign vessel, Defendant asserts she should be disallowed from testifying as an expert witness. *Id*. at 10.

As an initial matter, the Court finds that these two witnesses are experts, and are experts who are qualified to render opinions on the matters identified.  Although there appears to be various weaknesses in their opinion, those are weaknesses which counsel can explore during their testimony.  Given that this will be a bench trial, allowing these witnesses to testify offers little risk in terms of prejudice should the Court, at trial, find that some of their opinions are insufficiently supported by the testimony elicited at trial.  Specifically, as to Dr. Raffa, the gravamen of the Motion is that Plaintiff's earnings should not be based on her ability to earn a living due to her immigration status.  This, too, is also part of the objection to Dr. Frain.  However, what Plaintiff's immigration status currently is will certainly be explored at trial, and her testimony as to this can be explored in cross-examination.  In short, the immigration issue alone is not sufficient to strike the testimony.  As to Dr. Frain, the Court finds that the witness is qualified to testify as an expert.

To the extent that the data she relies on is insufficient or faulty, such matter shall be properly addressed during cross examination, and, therefore, does not require exclusion.

### III.   DEFENDANT'S   MOTION   IN   LIMINE   IS   DENIED   WITHOUT PREJUDICE

Defendant's *Motion in Limine* seeks to preclude Plaintiff's introduction of certain information into evidence.  ECF No. [147] at 1.  Specifically, Defendant seeks to exclude items that require exclusion due to irrelevancy, are otherwise prejudicial, or risk misleading the jury, such as: (1) insurance information for M/Y OLGA; (2) documentation regarding the Donzi; (3) select photographs of the Protector, the Donzi, and M/Y OLGA; (4) marketing and sales materials from charter broker, Churchill Partners; (5) testimony from Universal Marine Center ("UMC") or its bookkeeper; (6) Evidence, Statement, or Arguments regarding Maintenance And Cure; (7) duplicative testimony from Plaintiff's damages experts; and (8) medical records and billing not produced to Defendant in discovery.  *Id.* at 20.

(1) Insurance Information For M/Y OLGA:

Regarding any evidence, statement, or argument pertaining to insurance, Defendant argues they should be excluded because they attempt to inject insurance into litigation regarding liability, which goes against Rule 411 of the Federal Rules of Evidence and Florida's non-joinder statute. *Id.* at 3–4.  With this in mind, the OLGA Insurance Policy should be excluded because it falls under the state statute and would be irrelevant, since the injury occurred aboard the Protector, which was purchased and owned by Bernard Calot ("Calot") and therefore not under the insurance policy.  *Id.* at 5.  Also, the testimony of insurance broker John Furman should be excluded under the same principle, because Defendant asserts he will be called by Plaintiff to inject insurance issues into the litigation, when Calot could offer similar testimony without injecting insurance.  *Id.* at 6–7.

In her Response, Plaintiff argues that Defendant's Motion is an improper effort to dissociate itself from the Protector by denying control of it.  ECF No. [160] at 4.  While Defendant claims it had no control over the tender because it was owned by Calot, the insurance policy for the OLGA lists the Protector as an "Additional Watercraft" from January 2015 until the OLGA was eventually sold.  *Id.*  Therefore, Plaintiff does not seek to introduce the insurance policy for the purpose of proving Defendant's Captain acted negligently, but rather to rebut Defendant's denial of control.  *Id.* at 8.  Plaintiff states that although Defendant argues control is not an issue because Calot selected the insurance company and insured the vessel, the control at issue concerns the instrumentality, in this case the Protector, not the actual insurance policy.  *Id.* at 7.

Given that this is a bench trial, the Court does not find it necessary to exclude all mention of insurance *per se*.  To the extent that information regarding insurance bears on whether the Protector was a tender of the Olga, Plaintiff may seek to introduce that evidence at that time.  Of course, whether the Court ultimately allows it at trial will depend on the Rules of Evidence, but the Court here, in a Motion *in Limine*, declines to strike all references to insurance given that there may be some relevance to the facts at issue.  The Court, at this juncture, cannot determine whether the testimony of the broker would be necessary to exclude if the information regarding insurance is limited to those that might bear on the facts at issue, and therefore, his testimony is not stricken at this time.  As such, the Motion as to this issue is DENIED WITHOUT PREJUDICE, such that the admissibility of insurance can be determined in light of the evidence at trial.

(2) Documentation Regarding the Donzi:

Defendant argues that any documentation regarding Plaintiff's Donzi tender vessel, which was sold 119 days prior to the accident, would be irrelevant, cumulative, and otherwise confuse the jury.  ECF No. [147] at 7.  For instance, Defendant argues that Plaintiff's attempt to use the

documentation to allege that M/Y OLGA always had a tender would be irrelevant and confuse the jury. *Id.* Since the injury occurred on the Protector and not the Donzi, the photographs are irrelevant and would mislead the jury into thinking which vessel was involved in the incident. *Id.* at 8. In her Response, Plaintiff argues that the Donzi was used by Defendant as a tender during charters, and, although the Donzi was not directly involved in Plaintiff's injury, the documentation of the Donzi will contribute to the argument of "control" of the tender by Defendant. ECF No. [160] at 8. Moreover, Plaintiff also argues that the documentation of the Donzi will also contribute to Defendant's "need" for such a tender to be available at all times the M/Y OLGA was chartered. *Id.* The Motion as to this issue is DENIED WITHOUT PREJUDICE, as the Court finds that these are evidentiary objections appropriate for trial.

      (3) <u>Select Photographs Of The Protector, Other Vessels, And M/Y OLGA</u>:

      Similarly, Defendant argues that select photographs that show the Protector should be excluded because one photo appears to be edited, another shows the Protector vessel next to a yacht that is not M/Y OLGA, and another shows random persons on the Protector. ECF No. [147] at 8. Plaintiff states that Defendant's claim that one of the photos was doctored is a baseless assertion that uses only an online article as support. ECF No. [160] at 9. Meanwhile the other two photos support Plaintiff's conclusion that the Protector was used by Defendant to cater to guests that would charter the M/Y OLGA. *Id.* The Motion as to this issue is DENIED WITHOUT PREJUDICE, as the Court finds that these are evidentiary objections appropriate for trial.

      (4) <u>Marketing And Sales Materials From Charter Broker, Churchill Partners</u>:

      Defendant asserts the testimony and documents from Churchill Partners attempting to show that OLGA was being chartered during the accident should be excluded, since there is uncontroverted evidence that OLGA was out of service at the time stated in the documents. ECF

No. [147] at 9–10.  Therefore, Defendant states the evidence is faulty, cumulative, significantly prejudicial, and would confuse the finder of fact into thinking the OLGA was available for charter in April and the Protector would be the tender for OLGA.  *Id.* at 10. Plaintiff argues Defendant failed to show how Churchill Partners listing the M/Y OLGA for sale implied the Protector was not available for charter at the time of the subject loss.  ECF No. [160] at 10.  Rather, it only seems like Defendant wishes to introduce evidence that the Protector was for sale, while excluding evidence that M/Y OLGA was available for charter until it was sold.  *Id.*  The Court agrees with Plaintiff. At this stage, the evidence appears to be relevant, and Defendant can argue that the information is not relevant at trial.  As such, striking the information is not warranted.  The Motion as to this issue is DENIED.

(5) Testimony From Universal Marine Center ("UMC") Or Its Bookkeeper:

Defendant argues that testimony from the Universal Marine Center and its bookkeeper would also be cumulative and irrelevant because whether the Protector was at UMC would not aid the fact finder in determining whether Calot and Plaintiff were in the scope of employment at the time of the accident.  ECF No. [147] at 11.  Plaintiff states that testimony of UMC and its bookkeeper are relevant because UMC was the M/Y OLGA's home port and held information concerning the crew members aboard and records that the Protector was the OLGA's tender.  ECF No. [160] at 10.  The Court agrees with Plaintiff. The evidence at this stage appears to be relevant, and Defendant can argue that the information is not relevant at trial.  As such, striking the information is not warranted.  The Motion as to this issue is DENIED.

(6) Evidence, Statement, or Arguments regarding Maintenance And Cure:

Defendant argues that allowing evidence of Defendant paying for maintenance and cure to Plaintiff as proof of admission by Defendant that Plaintiff was acting within the scope of her

employment will invariably conflate two distinct standards of proof.  ECF No. [147] at 11. Specifically, Defendant argues that "course of employment" standard under the Jones Act is much more limited than the "service of the ship" standard which is used to determine a seaman's entitlement to maintenance and cure.  *Id.* at 12.  As such, Defendant argues that these two standards should be kept separate—as an action for maintenance and cure is independent from claims under the Jones Act.  *Id.*   In fact, Defendant contends that an action for maintenance and cure is "no fault" and a seaman, for that action, need not establish a causal relationship between her employment and the injury, or even that the injury occurred while the seaman was working or even aboard the vessel.  *Id.*  Therefore, Defendant argues that, in providing Plaintiff with maintenance and cure, it was merely fulfilling its obligation as Plaintiff's employer based on the no-fault employer/employee relationship.  *Id.* at 13.

In her Response, Plaintiff argues that Defendant fails to properly articulate any reason why such evidence would conflate with the standard in the Jones Act negligence claim.  ECF No. [160] at 10.  In fact, Plaintiff contends that she does not intend to introduce the maintenance and cure for purposes of proving Captain Calot's negligence, but, instead, only to rebut Defendant's affirmative defenses that Plaintiff was not acting within the course and scope of her employment.  The Motion as to this issue is DENIED WITHOUT PREJUDICE.  The District Court will be able to determine at trial whether the evidence is relevant to the issues at hand and the articulated concern that the evidence conflates the burdens of proof is of no moment given that this is a bench trial.

(6) Errata Sheets Submitted By Witnesses Changing Testimony:

Defendant argues deposition testimony must be limited to the court reporter's original deposition transcript without reference to contradictory errata sheets that Plaintiff's counsel submitted, particularly for Edgar Uribe, Sara Herrera, and Sara Tatiana Orozco.  ECF No. [147] at

14–18.   In response to Defendant's claims regarding the errata sheets from the deposition testimony, Plaintiff suggests this Court has previously rejected the narrow reading of Fed. R. Civ. P. 30(e)(1) and asserts the changes made follow the broad interpretation of Rule 30(e), which allows deponents to make substantive changes to depositions to avoid deviations from the original deposition in testimony at trial.  ECF No. [160] at 11–12.  Addressing Plaintiff's claim that this Court has previously rejected the narrow reading of Fed. R. Civ. P. 30(e)(1), Defendant states in its Reply that this Court has already ruled that it would disregard deposition errata sheets that directly contradict prior deposition testimony.  ECF No. [170] at 8.  Therefore, because the Court already decided on the issue, it cannot revisit once it has ruled.  *Id.* at 9.  Given that this matter was already considered by the District Court, the undersigned will DENY the Motion as the Court's previous ruling will control as to this issue.

(7) <u>Duplicative Testimony From Plaintiff's Damages Experts</u>:

Because Plaintiff listed both Julianne Frain, Ph.D. ("Dr. Frain") and Frederick A. Raffa, Ph.D. ("Dr. Raffa") to offer opinions on economic damages related to loss of earning capacity and long-term care needs, Defendant argues their testimony is overlapping and redundant.  ECF No. [147] at 18.  Instead, Plaintiff should be limited to entering the testimony of only one of her experts and in congruence with a related *Daubert* Motion.  *Id.* at 19.  Plaintiff argues that they are not duplicative because one expert is providing a life care plan while the other is providing an economic analysis.  ECF No. [160] at 12–13.  According to Plaintiff, Dr. Raffa's economic analysis relies on Dr. Frain's opinion concerning the medical costs and rehabilitation plan for Plaintiff and projects the future cost of these rehabilitations and costs.  *Id.* at 14.  Therefore, the two testimonies are complementary, with Dr. Frain laying the foundation and Dr. Raffa using the information to

create his report.  *Id.* at 15.  The testimony at issue, although having some overlap, is not duplicative and should not be stricken on that ground.  The Motion as to this issue is DENIED.

(8) <u>Medical Records And Billing Not Produced To Defendant In Discovery</u>:

Defendant states medical records and billing that were not produced to Defendant during discovery should be excluded, because the documents produced referenced therapy session notes or encounters and billing records which were not produced for several dates.  ECF No. [147] at 20.  Plaintiff denies that there are any additional medical records and billing that were not provided to Defendant during discovery.  ECF No. [160] at 14.  The Motion is DENIED as Defendant has not articulated any prejudice to the late production of these documents.  Whether these documents are admissible at trial is a separate question, the issue here is whether these notes and records should be excluded as a discovery violation and the Court finds that that ground is not sufficient to exclude them.

## IV.    PLAINTIFF'S MOTION IN LIMINE IS DENIED.

Plaintiff filed her Motion *In Limine* on July 10, 2020.  ECF No. [158].  7R Charter Limited, Defendant, filed its Response in Opposition to Plaintiff's Motion on July 22, 2020.  ECF No. [171].  Upon consideration of the Motion, the pertinent portions of the record, and the relevant authorities, Plaintiff's Motion *In Limine* is **DENIED**.

Plaintiff filed this Motion to prevent Defendant from denying that the Protector was the tender of the OLGA when Plaintiff was injured and to admit into evidence the OLGA's policy of insurance.  ECF No. [158] at 4, 5.  According to Plaintiff, the insurance policy where the Protector is listed as the "Additional Watercraft" to the vessel and the testimony of Luis Rubi, the beneficial owner of the vessel, support the finding that the Protector was the tender of the OLGA at the time of Plaintiff's injury.  *Id.* at 4.  Additionally, the Protector served as the tender to the OLGA in the

four months leading up to the accident, during which the vessel was chartered on three occasions and totaling 15 days.  *Id.* at 5.  Plaintiff argues that this fact proves the Protector served as the OLGA's tender consistently from the day it was purchased, and that allowing Defendant to deny this would confuse and mislead the trier of fact.  *Id.*  Furthermore, since Defendant's president and beneficial owner testified that he did not have anything to do with the Protector, Plaintiff argues this has "opened the door" for introduction of the OLGA's insurance policy in order to prove the Protector was the tender of the OLGA and that Defendant had control of the tender.  *Id.*at 5–6.

In its Response, Defendant argues the Court should deny the Motion because Plaintiff is attempting to have a blanket theory that she was within the scope of employment because she was injured on the Protector, while blocking any of Defendant's witnesses from testifying that the Protector was not the tender to OLGA on the date of Plaintiff's accident.  ECF No. [171] at 4. Instead, if Plaintiff were to present evidence that the Protector was the OLGA's tender on the day of the accident, Defendant should be entitled to rebut that evidence with its own.  *Id.* at 5.  Also, Defendant argues that just because Mr. Rubi admitted in prior testimony that the Protector was the tender to OLGA while OLGA was under charter, this one fact should not allow Plaintiff to use an unchallenged broader statement that the Protector was always the tender to the OLGA.  *Id.* at 13. In addition, Defendant argues its witnesses should be entitled to testify that the Protector was not OLGA's tender on the date of the incident because that fact is one of the many factual bases of Defendant's contention that Plaintiff and Bernard Calot ("Calot") were not acting in the course and scope of their employment at the time of the injury.  *Id.*  According to Defendant, Plaintiff's Motion seeks more than a pretrial evidentiary ruling.  *Id.* at 14.  Defendant argues that Plaintiff's Motion also attempts to have the Court exclude the substantive issue of fact of whether the

Protector was a tender for OLGA on the date of the accident and eliminate a portion of Defendant's entire defense.  *Id.* at 13–14.

Whether the Protector is a tender or a private vessel needs to be considered by the fact finder.  Indeed, granting Plaintiff's Motion would present an unworkable scenario as it would limit a host of facts that go to a central issue: whether Plaintiff was within the scope of her employment.  If Plaintiff intends to argue that the Protector was a tender, Defendant cannot and should not be limited in rebutting that evidence.  This Motion is DENIED.

## V.    DEFENDANT'S MOTION FOR PRERTIAL CONFERENCE IS DENIED.

On July 24, 2020, Defendant filed a Motion to Set Pre-Trial Conference.  ECF No. [172].  On August 7, 2020, Plaintiff filed her Response to Defendant's Motion to Set Pre-Trial Conference.  ECF No. [176].  For the reasons stated below, the Motion is DENIED.

Defendant moves the Court to schedule a pre-trial conference in order to address the issue of whether negligence under the Jones Act requires the employer to have actual or constructive notice and an opportunity to correct any unsafe condition.  ECF No. [172] at 1–2.  According to Defendant, federal maritime law requires, as a prerequisite to imposing liability, that the vessel owner have had actual or constructive notice of the risk creating condition, and there is ample Eleventh Circuit authority that supports the requirement of notice.  *Id.* at 2.  Also, Defendant asserts Plaintiff failed to present adequate evidence that: (1) an unsafe condition existed on the subject vessel; (2) Defendant either knew or should have known of the unsafe condition; and (3) Plaintiff provided notice to Defendant regarding the unsafe condition.  *Id.* at 4–5.  Therefore, this Court should schedule a pre-trial conference to consider whether this case needs to go to the trier of fact or whether the issue of notice should first be presented to the trier of fact and, thereafter, proceed to consider the remaining disputed issues of law.  *Id.* at 5–6.

Plaintiff argues in her Response that there is no requirement of notice in a Jones Act lawsuit because Plaintiff was injured as a result of the negligent order given to her by her supervisor.  ECF No. [176] at 2.  In short, because Captain Calot's operational negligence caused Plaintiff's injuries rather than a dangerous condition onboard the vessel, Plaintiff argues Defendant is vicariously liable as Calot's employer.  *Id.* at 2–3.  Plaintiff also argues Defendant mischaracterizes the applicable law in its Motion because they do not address the legal standard for a seaman's claim for vicarious liability under the Jones Act.  *Id.* at 2.  Instead, Plaintiff argues that Defendant's cases discuss situations where there were unsafe physical conditions onboard a vessel.  *Id.*  Finally, Plaintiff asserts that Defendant's Motion mischaracterizes the facts of the case by claiming, without evidence, there existed an unsafe condition on the subject vessel.  *Id.* at 2–3.  According to Plaintiff, she never accuses Defendant of failing to correct an unsafe condition, but rather, stated Captain Calot, on behalf of Defendant, had a duty to provide non-negligent and reasonably safe instructions to his crew.  *Id.* at 5.  Therefore, Calot breached his duty when he ordered Plaintiff to standby on the bow of the Protector before it was near the dock, and Plaintiff's injuries stemmed solely from the unsafe instructions rather than an unsafe condition.  *Id.*

The Court has considered the Motion and sees no reason why this issue should be addressed at a pre-trial conference.  The matter is proceeding as a bench trial, and as such, the District Court will make findings of facts and conclusions of law in the normal course.  There is no benefit to hearing this issue before the trial begins.  The Motion is DENIED.

**DONE AND SUBMITTED** in Chambers at Miami, Florida, on October 23, 2020.

_____
JACQUELINE BECERRA
United States Magistrate Judge